USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH VIDAL,

                        Plaintiff,

  -against-

DONALD E. VENETTOZZI, et al,

                        Defendants.

18-cv-6184 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Joseph Vidal ("Plaintiff") commenced this action on or about July 6, 2018. On January 7, 2019, Plaintiff filed an Amended Complaint against Defendants Donald E. Venettozzi ("Venettozzi"), Eric Gutwein ("Gutwein"), Wayne Carrol ("Carrol"), and Bryan P. Anspach ("Anspach") (collectively, "Defendants"), alleging violations of Section 1983 of the Civil Rights Act ("Section 1983"). (ECF No. 11.)

    On June 25, 2020, Defendants filed a motion to dismiss the Amended Complaint. (ECF No.38.) On September 10, 2020, Plaintiff submitted opposition to Defendants' motion. (ECF No. 47.) For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from Plaintiff's Amended Complaint, dated January 7, 2019. (ECF No. 11.)

    In March 2015, Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven"). (ECF No. 11 at 4.) Defendants served various roles in the disciplinary process at Green Haven. Venettozzi is the Director of Special Housing Unit ("SHU"), Inmate Disciplinary Program and is responsible for the operation of the disciplinary process, including review of

guilty disposition of administrative proceedings and training hearing officers. (*Id*.) Gutwein is a Commissioner Hearing Officer ("CHO"). (*Id*. at 5.) Carrol is a Recreation Program Leader and was also designated by Lynn Lilly, First Deputy Superintendent, as a Disciplinary Employee Assistant. (*Id*. at 5-6.) Anspach is a Correction Sergeant at Green Haven and the officer-in-charge at the Facility's Disciplinary Office and performed duties included locating witnesses and obtaining requested information and documents. (*Id*. at 6.)

On March 6, 2015, Plaintiff experienced difficulties retaining possession of certain legal materials while being transferred from E-block to A-block at Green Haven. (*Id*. at 7.) During the transfer process, CO Wesley and Co Lampon refused to permit Plaintiff to bring more than four bags of property. (*Id*. at 8-9.) Plaintiff indicated that he possessed extra bags of legal material and that he had written the superintendent to obtain permission to possess these materials. (*Id*.) Plaintiff also requested that CO Lampon contact the security office or call a supervisor because Department of Corrections and Community Supervision ("DOCCS") directives contain exceptions that permit possession of additional legal materials. (*Id*.)

Plaintiff's request was not well received. CO Lampon exited the control gate and advised him in a condescending tone that, "I am not calling no one, put whatever excess property you have in this bag." (*Id*. at 9.) CO Lampon returned to the control gate and directed the clerk and porters to either lock in Plaintiff or take him up to the second deck. (*Id*. at 9.) CO Wesley then called to CO Tagliaferri, who was working on the second and third decks and informed her that Plaintiff was going up. (*Id*. at 10.) CO Lampon exited the control gate and directed Plaintiff to take up any bag he felt he didn't have to reduce in order to comply with property limits. (*Id*. at 10.) Plaintiff grabbed a red commissary bag filled with legal materials and exited the company past CO Wesley, CO Lampon, CO Cocuzza, and CO Chase who were in front of the control

gate. (*Id*. at 10.) Plaintiff ascended the stairs and handed his bag to Espinal, another incarcerated individual. (*Id*. at 10.) CO Tagliaferri was at the second deck control gate. (*Id*. at 10.)

After Plaintiff descended the stairs, and returned to the control gate, CO Lampon "got physical" with Plaintiff and placed him in hand mechanical restraints. (*Id*. at 10-11.) A response team was summoned and, when Sergeant James Carter inquired what happened, CO Wesley stated "he didn't want to comply with the property limit." (*Id*. at 11.) CO Lampon and CO Wesley then accused Plaintiff of assaulting them. (*Id*. at 11.)

On March 8, 2015, Plaintiff received two inmate misbehavior reports ("IMR"s) relating to the aforementioned events of March 6, 2015. The first IMR, authored by CO Lampon, charged Plaintiff with violating Departmental Rules 100.11-Assault on Staff, 104.11-Violent Conduct, 106.10-Refusal of a Direct Order, and 104.13-Creating a Disturbance. The second IMR, authored by CO Wesley, charged Plaintiff with violating Department Rules 100.11- Assault on Staff, 104.11- Violent Conduct, and 104.13- Creating a Disturbance. (*Id*. at 11-12.) CO Wesley and CO endorsed each other's reports. (*Id*. at 12.)

On March 9, 2015, Defendant Carrol was notified that he was selected to assist Plaintiff with the charges filed against him. (*Id*. at 12.) Carrol met with Plaintiff and Plaintiff provided a written request for assistance. (*Id*. at 12.) Plaintiff asked Carrol to interview three other additional incarcerated individuals—Candelaria, Margano, and Dunlap—to determine if they would testify on Plaintiff's behalf. (*Id*. at 12.) Plaintiff also asked Carrol to obtain a copy of: (1) the A-block log book, (2) the name of the female officer working the second deck, (3) the A-block 1st officer's job description, and (4) DOCCS directive 4913. (*Id*. at 13.)

On March 11, 2015, Defendant Carrol informed Plaintiff that five incarcerated individuals agreed to testify on his behalf. (*Id*. at 13.) Plaintiff inquired as to Espinal's written

3

statement and Carrol responded "he is going to be your witness." (*Id*. at 13.) Plaintiff asked Carrol whether he had successfully obtained the logbook, job description, and name of the female officer. (*Id*. at 13-14.) Carrol told him "you can't get them and you could call the officer at the hearing." (*Id*. at 14.) Carrol provided an assistant form and stated "I know a lot of things are going on in A-block, this is all the disciplinary office allowed me to do, I can't do any more." (*Id*. at 14.)

Plaintiff alleges that Anspach interfered with Defendant Carrol's role as Plainitff's Employee Assistant and that Anspach refused to assist with requesting departmental and facility records or arrange for documents to be made available at the hearing. (*Id*. at 14.) Plaintiff needed these records to discredit both CO Lampon and CO Wesley. (*Id*. at 14.)

On March 12, 2015, Defendant Gutwein convened a combined Tier III Superintendent Disciplinary Hearing on the charges against Plaintiff. (*Id*. at 15.) During the hearing, Plaintiff requested that Gutwein obtain a copy of the A-block job description, a copy of employee manual, and a copy of Departmental Direction 4913 governing property limits. (*Id*. at 15.) Plaintiff also requested that several witnesses be made available to testify including all witnesses who had agreed to testify on his behalf, another incarcerated individual named David Woodrow, and the female officer who was assigned to work the second and third decks. (*Id*.) The hearing was adjourned so that the witnesses and relevant documents could be located. (*Id*. at 15-16.)

Thereafter, Gutwein reconvened the hearing and summoned two incarcerated individuals, Dulap and Margano, to the facility disciplinary office, where their testimony was given via telephone. (*Id*. at 16.) Gutwein also summoned officers Lampon, Wesley, Cocuzza, and Chase, as well as Sergeant Carter. (*Id*. at 16.)

On May 11, 2015, Gutwein reconvened the hearing and denied Plaintiff's request to produce incarcerated individuals Candeliaria and Woodrow and the unidentified female officer as witnesses. (*Id*. at 17.) Gutwein made no effort to personally interview Candelaria, denied Plaintiff's document requests, indicated that the requested documents were not relevant to the disciplinary hearing. (*Id*. at 17.) After the hearing, Gutwein found Plaintiff guilty of the charges in the two IMRs, imposed 270 days of restricted confinement in a SHU, rescinded his privileges—including his possession of certain packages, commissary, and access to the inmate telephone—, and recommended a loss of 9 months' Good Time Allowance. (*Id*. at 17.)

On June 9, 2015, Plaintiff was transferred hundreds of miles away to a facility in upstate New York. (*Id*. at 18.) At the upstate facility, Plaintiff was deprived of free movement, physical access to the general population recreation—*e.g.*, daily showers, use of the telephone, use of television, social activities, exercise equipment—, regular visits without restrictions, law library access, program and/or job assignments, prison wages, commissary purchases, food packages, and prescribed and over-the-counter medications. (*Id*. at 18.) Though unclear, Plaintiff also appears to allege that DOCCS delayed or prevented his access to medical treatment and diagnostic procedures including physical therapy and recommended MRI examinations. (*Id*. at 18.)

On July 1, 2015, Plaintiff appealed Gutwein's decision to Venettozzi. (*Id*. at 19.) Plaintiff's administrative appeal was denied. (*Id*. at 19.) On or about October 1, 2015, Plaintiff commenced an Article 78 proceeding in New York Supreme Court, Albany County, to review the May 22, 2016 and July 7, 2015 determinations. (*Id*. at 19.) Then, on March 2, 2016, Plaintiff's case was transferred to The Appellate Division, Third Judicial Department. (*Id*. at 19.) By memorandum and judgment dated April 20, 2017, that court unanimously found that the

Hearing Officer erred by denying Plaintiff's request to call a witness and annulled the May 11, 2015 determination. (*Id*. at 19-20.)

## STANDARD OF LAW

### I. Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); see also Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.2010) (internal quotation and citation omitted). Courts may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Id*. at 679. "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

"Pro se complaints are held to less stringent standards than those drafted by lawyers, even following Twombly and Iqbal." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013). The court should read pro se complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally"). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## II.     Incarcerated Individual's Due Process Protections

"The due process protections afforded a prison inmate do not equate to 'the full panoply of rights' due to a defendant in a criminal prosecution.'" *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). For example, there is no right to counsel or to confrontation. *Id*. Nor is there a right to a speedy hearing. See *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) ("[T]he violation of 7 N.Y.C.R.R. § 251–5.1(a) [regarding the timing of a disciplinary hearing] alone would not be enough generally to establish a constitutional claim."); see also *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) ("Due process for an inmate disciplinary hearing does not encompass a right to a speedy hearing."). Prison inmates nevertheless are entitled to certain procedural protections, including (1) advance written notice of charges against him, (2) a "reasonable opportunity to call witnesses and present documentary evidence," (3) a fair and impartial officer, and (4) a written statement of the disposition. *Id*.

There are, of course, certain limitations to these procedural protections. For example, the right to call witnesses must be balanced "against the needs of the prison." *Colon v. Annucci*, 344 F. Supp. 3d 612, 634 (S.D.N.Y. 2018). Specifically, officers may deny a request to call a witness "on the basis of irrelevance[,] lack of necessity, or 'futility,'" which includes "situations in which 'witness will not testify if called.'" *Id*. (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).

## DISCUSSION

On June 25, 2020, Defendants file a motion for judgment on the pleadings. (ECF No. 39.) On September 10, 2020, Plaintiff submitted his opposition to Defendants' motion. (ECF No. 47.)

## I.     Claims Against Defendant Venettozzi

"In actions under 42 U.S.C. § 1983, good faith or qualified immunity is an affirmative defense which must be pleaded by the defendant officials." *Williams v. Smith*, 781 F.2d 319, 322

8

(2d Cir. 1986) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, (1982); *Sec. & Law Enforcement Emp. Dist. C. 82 v. Carey*, 737 F.2d 187, 210 (2d Cir. 1984)). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982); *Johnson v. Perry*, 859 F.3d 156, 169 (2d Cir. 2017). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," *McClenton v. Menifee*, 2006 WL 2474872, at *14 (S.D.N.Y. Aug. 22, 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (internal citation and quotation marks omitted)). Qualified immunity protects defendants not just from liability, but also from having to litigate at all. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

There is a two-step analysis in determining whether an official is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201-02; *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002). "In resolving the question of qualified immunity, a court must decide whether the alleged conduct was a violation of a constitutional right and whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct," *Gonzalez v. City of Schenectady*, 728 F.3d 149, 164 n. 2 (2d Cir. 2013) (citing *Saucier*, 533 U.S. at 201); *see also Hope v. Pelzer*, 536 U.S. 730, 739, (2002) (contours of constitutional right violated must be sufficiently clear).

Plaintiff argues that Venettozzi's failure to reverse Gutwein's decision is a violation of due process under the Fourteenth Amendment. It is unclear "whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Lebron v. Mrzyglod*, 2017 WL 365493, at *8 (S.D.N.Y. Jan. 24, 2017); *Constant v.*

9

*Prack*, 2019 WL 3287818, at *4 (S.D.N.Y. July 19, 2019) (citing *Constant v. Annucci*, 2018 WL 1684411, at *4 (S.D.N.Y. April 5, 2018)). The Second Circuit has suggested on at least two occasions that an appeal officer may be liable for failing to correct procedural due process errors in the underlying hearing. *See Wright v. Smith*, 21 F.3d 496, 502 (2d Cir. 1994) (finding that Defendant—who reviewed and affirmed a hearing where Plaintiff was denied notice of the hearing and its outcome, an impartial hearing officer, the right to be present, and the right to respond to the evidence against him—was a supervisory official who after learning of the violation through a report or appeal failed to remedy a wrong and, therefore could be held liable); *Williams v. Smith*, 781 F.2d 319, 325 (2d Cir. 1986) (finding an issue of material fact concerning superintendent's personal involvement in violating inmate's civil rights by affirming result of disciplinary hearing at which inmate was purportedly deprived of due process by not being allowed to call witnesses).

District Courts reviewing those cases, however, "have determined that the circumstances were factually unique enough to leave open the question of whether an appeal officer may be held liable merely for the failure to reverse the outcome of an allegedly unconstitutional hearing." *Lebron*, 2017 WL 365493, at *8. Therefore, even if Plaintiff were to prevail in showing Venettozzi's actions constituted a constitutional violation, Venettozzi would be entitled to qualified immunity because the right to an error-proof appeal officer is not clearly established at the time of Venettozzi's appeal decision. As such, Plaintiff's claims against Venettozii are dismissed without prejudice.

## II.    Claims Against Defendant Gutwein

Defendants argues that the claims against Gutwein should be dismissed because "disciplinary hearing officers have the discretion to deny witnesses [for reasons including] irrelevance, lack of necessity, and other hazards particular to each case." (ECF No. 39 at 11.)

10

Defendants argue that Gutwein provided reasons for the denial of certain witnesses and documents, including a determination that the witnesses refused to testify or that their testimony was irrelevant. However, Plaintiff incorporates into his Amended Complaint by reference, a memorandum and judgment of the Appellate Division, Third Department, finding that Gutwein improperly denied the relevant testimony of at least one eyewitness as "irrelevant." Therefore, although hearing officers have the discretion to deny irrelevant witness testimony, the Court finds that Plaintiff has adequately plead that the witnesses and documents withheld by Gutwein may have, in fact, been relevant. As such, the Court will not dismiss the claims against Defendant Gutwein.

### III. Claims Against Defendant Carrol

Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges. *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988). Nonetheless, Defendants argue that the claims against Defendant Carrol should be dismissed because analogous instances of assistance have been deemed adequate. For example, the court in *Brooks v. Piecuch* explained that "[c]ourts have found assistance to be adequate when a replacement assistant interviewed witnesses but failed to tell the inmate … or when the inmate alleged lack of assistance in finding documents, courts found that the documents did not exist." 245 F.Supp.3d 431 (2017). That case is distinguishable. Unlike in *Brooks*, Plaintiff alleges that Gutwein failed to ascertain the identify of a female officer witness, failed to obtain the written testimony of Espinal, and failed to obtain documentation, all of which Defendant alleges were relevant to his defense. Therefore, the Court will not dismiss the claims against Defendant Carrol.

### IV. Claims Against Defendant Anspach

The only allegations Plaintiff makes against Defendant Anspach are that he "interfered with Defendant Carrol's role of [Plaintiff's] Employee Assistant" and "would refuse to assist with requesting departmental and facility records or arrange for documents to be made available at the hearing." (*Id*. at 14.) Plaintiff's allegations against Anspach are conclusory and unsupported by factual allegations of the actual circumstances surrounding Anspach's alleged interference and refusal to assist. As such, the Court dismisses Plaintiff's claims against Anspach without prejudice to amend said claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Defendants Vennetozzi and Anspach and DENIED as to Defendants Carrol and Gutwein. As the claims are dismissed without prejudice, Plaintiff is granted leave to file a Second Amended Complaint on or before April 19, 2021. Should Plaintiff fail to timely file a Second Amended Complaint or fail to seek an extension, the Amended Complaint shall be deemed the operative complaint and the parties are directed to complete a Case Management Plan and Scheduling Order (blank form attached hereto). Said Scheduling Order shall be submitted to Chambers by May 17, 2021. After review and approval of the Scheduling Order, the Court will issue an Order of Reference to Magistrate Judge Paul E. Davison. The parties are directed to contact Judge Davison within seven (7) business days of the date of the Order of Reference to schedule a conference. In the event Plaintiff files a Second Amended Complaint, Defendants shall have twenty-one days to file responsive pleading.

The Clerk of the Court is directed to terminate the motion at ECF No. 38, to terminate Defendants Vennetozzi and Anspach, and to mail a copy of this opinion to pro se Plaintiff at the address on ECF and to show service on the docket.

Dated: March 19, 2021           SO ORDERED:

White Plains, New York

NELSON S. ROMÁN

United States District Judge

UNITED STATES DISTRICT COURT　　　　　　　　　　　　　　　　Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

　　　　　　　　　　　　　　　　　　　　　　　　　**CIVIL CASE DISCOVERY PLAN**
　　　　　　　　　　　　　Plaintiff(s),　　　　　　**AND SCHEDULING ORDER**

　　- against -


　　　　　　　　　　　　　Defendant(s).　　　_____ CV _____ (NSR)

-------------------------------------------------------------x

　　　　This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.　　All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.　　This case [is] [is not] to be tried to a jury.

3.　　Joinder of additional parties must be accomplished by _____.

4.　　Amended pleadings may be filed until _____.

5.　　Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.　　First request for production of documents, if any, shall be served no later than _____.

7.　　Non-expert depositions shall be completed by _____.

　　　a.　　Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

　　　b.　　Depositions shall proceed concurrently.

　　　c.　　Whenever possible, unless counsel agree otherwise or the Court so orders,

        non-party depositions shall follow party depositions.

8.   Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.   Requests to Admit, if any, shall be served no later than _____.

10.  Expert reports shall be served no later than _____.

11.  Rebuttal expert reports shall be served no later than _____.

12.  Expert depositions shall be completed by _____.

13.  Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.  **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.  Any motions shall be filed in accordance with the Court's Individual Practices.

16.  This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.  The Magistrate Judge assigned to this case is the Hon. _____.

18.  If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.  The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
       _____

                                           _____
                                           Nelson S. Román, U.S. District Judge