```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/20/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH VIDAL,

                Plaintiff,

-against-

DONALD E VENETTOZI, et al.,

                Defendants.

No. 18-cv-6184 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Joseph Vidal ("Plaintiff"), an incarcerated *pro se* litigant, commenced this action on July 6, 2018 against Defendants Don E. Venettozzi, Eric Gutwein, Wayne Carrol, and Bryan P. Anspach (collectively, "Defendants"), all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983. (*See* ECF No. 49, "Second Amended Complaint" or "SAC".)

    Presently before the Court is Defendants' motion for summary judgment. (ECF No. 114, "Motion".) For the following reasons, the Court GRANTS the Motion.

## BACKGROUND

### I. Factual Background

    The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

    In March 2015, Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven"). (ECF No. 115, Defendants' Statement of Undisputed Facts Pursuant to Fed. R. Civ. P.

1

56.1, "Defs.' 56.1" ¶ 2.) That month, he was issued two misbehavior reports while already confined to the Special Housing Unit ("SHU"), the disciplinary unit at Green Haven. (*Id.* ¶¶ 3-4.) A disciplinary hearing commenced on March 12, 2015, and concluded on May 12, 2015. (*Id.* ¶ 6.) Defendant Eric Gutwein was the Commissioner Hearing Officer who conducted this disciplinary hearing. (*Id.*). At the conclusion of the hearing, Plaintiff was found guilty of seven (7) charges and Defendant Gutwein imposed a penalty of 270 days in the SHU as well as loss of packages, loss of commissary, loss of phone, and nine (9) months loss of good time. (*Id.* ¶ 7.)

While in the SHU, Plaintiff was permitted one (1) hour of recreation daily and two showers per week. (*Id.* ¶¶ 14, 17.) He was allowed to own one (1) pair of pants, one (1) shirt, one (1) pair of underwear, one (1) set of slippers, and one (1) pair of sneakers. (*Id.* ¶ 15.) On June 9, 2015, while serving in the SHU, Plaintiff was transferred out of Green Haven to Upstate Correctional Facility ("Upstate") and completed his SHU time at Upstate. (*Id.* ¶ 10.) After completing his SHU time at Upstate, he was transferred to Great Meadow Correctional Facility's general population. (*Id.* ¶ 11.)

## II.   Procedural History

On July 6, 2018, Plaintiff commenced the present action. (ECF No. 2.) On January 7, 2019, Plaintiff filed an Amended Complaint (ECF No. 11), and on April 26, 2021, he filed the SAC (ECF No. 49). On September 22, 2023, Defendants filed a motion for summary judgment on all of Plaintiff's claims, as well as a memorandum of law (ECF No. 117, "Defs.' MoL") and reply (ECF No. 122) in support thereof. In response, Plaintiff opposed Defendants' Motion. (ECF No. 125, "Pltf.'s Opp".) Plaintiff also filed additional submissions in opposition, which the Court has considered as part of its ruling. (*See* ECF No. 126, "Pltf.'s Decl.", and ECF No. 127.)

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is

3

not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## DISCUSSION

Plaintiff asserts claims under 42 U.S.C. § 1983 for due process violations arising out of the 2015 disciplinary hearing that led to his placement in the SHU. To present a due process claim, Plaintiff must establish "(1) that he possessed a liberty interest and (2) that the [D]efendant[s] deprived him of that interest as a result of insufficient process." *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation omitted). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004)). Where the plaintiff was confined to the SHU "for an intermediate duration—between 101 and 305 days 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required," to determine whether the plaintiff suffered an atypical and significant hardship. *Palmer*, 364 F.3d at 64–65 (quoting *Colon v. Howard,* 215 F.3d 227, 232 (2d Cir. 2000)).

"Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Id.* at 64 (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir. 1998)). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner,* 197 F.3d 578, 586 (2d Cir.1999) (citation omitted). Disputes about conditions may not be resolved on summary judgment, but

4

where the conditions are undisputed, the question of atypicality can be resolved as a matter of law. *See Colon,* 215 F.3d at 230-31.

Here, Plaintiff was sentenced to 270 days in the SHU and served 180 days.[1] (*See* Defs.' 56.1 ¶¶ 8-9.) This constitutes an intermediate duration of confinement. *See Palmer*, 364 F.3d at 64–65. As a result, the Court must review the factual record to determine whether Plaintiff was housed in atypical and significant conditions relative to the Second Circuit's understanding of normal SHU confinement. *See id.* It is undisputed that while in the SHU, Plaintiff was allowed limited daily recreation and weekly shower time and was permitted to own limited items of clothing. (*See* Defs.' 56.1 ¶¶ 14-15, 17.) Plaintiff was also not allowed to make phone calls nor receive packages. (*See id.* ¶¶ 18-19.) These conditions reflect the standard conditions of SHU confinement.[2] *See Brown v. Venettozzi*, No. 18-CV-2628 (KMK), 2019 WL 4194432, at *5 (S.D.N.Y. Sept. 4, 2019) (*"*While the Second Circuit has declined to 'delineate the precise contours of "normal" SHU confinement…it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week'") (quoting *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004)); *Allah-Kasiem v. Sidorowicz*, No. 09 CIV. 9665 DLC, 2012 WL 2912930, at *10 n.4 (S.D.N.Y. July 17, 2012) ("Under the 'normal conditions of SHU confinement in New York,' the prisoner is: placed in a solitary confinement cell, kept in his cell for 23 hours a day,

---

[1] Plaintiff disputes this figure and contends that he was instead housed in the SHU for an additional 79 days, for a total of 259 days. (*See* ECF No. 124, Plaintiff's Counterstatement of Undisputed Facts Pursuant to Fed. R. Civ. P. 56.1 ¶ 9.) Even crediting Plaintiff's account, Plaintiff's total time in the SHU would still constitute an intermediate duration of confinement. *See Palmer*, 364 F.3d at 64–65 (noting that a period of 101 to 305 days is considered an intermediate duration of confinement). Accordingly, the analysis the Court must undertake is the same regardless of whether Plaintiff served 180 or 259 days in the SHU.

[2] Plaintiff additionally contends that he was forced to wear mechanical restraints during shower and recreation time as well as at medical appointments while in the SHU. (*See* Pltf.'s Decl. ¶ 53.) "Mechanical restraints," however, "are typically used in prison, particularly in special housing units," and therefore do not constitute "an atypical hardship when compared to the ordinary incidents of prison life." *See Ruggiero v. Fischer,* 807 F. App'x 70, 73 (2d Cir. 2020) (summary order).

5

permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling") (quoting *Palmer,* 364 F.3d at 65 n. 3). Courts within this Circuit have found that standard "SHU confinement in New York generally does not impose 'atypical and significant hardship' because it remains within the normal range of prison custody." *See Flemings v. Kinney*, No. 02 CIV. 9989 (DC), 2004 WL 1672448, at *4 (S.D.N.Y. July 27, 2004) (quoting *Trice v. Clark,* No. 94 Civ. 6871(SAS), 1996 WL 257578, at *3 (S.D.N.Y. May 16, 1996)); *see also Baker v. Finn*, No. 00 CIV. 3886 (DC), 2001 WL 1338919, at *4 (S.D.N.Y. Oct. 31, 2001) (explaining that standard SHU "restrictions do not form the basis of a due process claim"); *Williams v. Goord,* 111 F. Supp.2d 280, 289 (S.D.N.Y. 2000) ("SHU confinement in New York generally does not impose 'atypical and significant hardship' because it remains within the normal range of prison custody."). As a result, to the extent that Plaintiff relies upon these standard conditions to demonstrate atypical and significant hardship, *see* Pltf.'s Opp. at 7, he is unsuccessful because "the conditions to which [Plaintiff] objects—limited shower privileges, lack of telephone access, spartan accommodations—are on par with the normal conditions of confinement," *see Tabb v. Rosemary*, No. 12 CIV. 1520 PAE, 2014 WL 240266, at *4 (S.D.N.Y. Jan. 22, 2014). Nor is it enough, as Plaintiff argues, that these conditions were restrictive "in comparison with privileges, free mo[ve]ment, and normal prison life enjoyed by other Incarcerated Individuals in [the] general population," Pltf.'s Opp. at 7, because such conditions were on par with those ordinarily faced by individuals housed in the SHU. *See, e.g., Husbands v. McClellan*, 990 F.Supp. 214, 217-19 (W.D.N.Y. 1998) (finding no liberty interest deprivation where the plaintiff served 180 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997)

6

(same, in a case involving 192 days in SHU under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in SHU under numerous conditions of confinement that were more restrictive than those in general population did not constitute atypical and significant hardship in relation to ordinary incidents of prison life). In sum, Plaintiff's experience of standard conditions in the SHU does not reflect an atypical, significant deprivation. *See Sealey*, 197 F.3d at 589–90 (no atypical and significant hardship found where an inmate was confined to his cell 23 hours per day, could take no more than three showers per week, had limited library privileges, no telephone privileges, the atmosphere was noisy because there was no quiet bell, and occasionally inmates threw feces at other inmates); *Frazier v. Coughlin*, 81 F.3d 313, 315, 317 (2d Cir. 1996) (loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Arriaga v. Otaiza*, No. 20-CV-06992 (PMH), 2021 WL 5449849, at *7 (S.D.N.Y. Nov. 19, 2021) (loss of recreation, phone, packages, and commissary privileges "do not represent the types of deprivations which could reasonably be viewed as imposing atypical and significant hardship on an inmate"); *Brown*, 2019 WL 4194432, at *5 (allegations of 210 days in SHU confinement, a dingy cell, one hour of exercise per day, two showers per week, and no access to prison activities did not sufficiently allege "atypical" conditions of confinement).

In addition to the above standard conditions, Plaintiff alleges that he faced inadequate nutrition and lack of ventilation while housed in the SHU. (Pltf.'s Decl. ¶¶ 41-46, 48-51.) In particular, he claims that most of the food provided to SHU inmates is "made from soy….[f]rozen,…or soggy." (*Id.* ¶¶ 48-50.) In addition, for a portion of his stay in the SHU, his cell suffered from poor ventilation and "cruel hot temperatures" because windows located along

the walkways between cells would not open. (*Id.* ¶¶ 41-44.) Even accepting these disputed allegations as true for purposes of opposition to a summary judgment motion, these facts would still be insufficient to permit a conclusion of atypical and significant deprivation. Frozen or soggy food, as a matter of law, does not amount to a constitutional violation. *See Arriaga*, 2021 WL 5449849, at *7 (holding that the denial of warm food does not establish the deprivation of a protected liberty interest); *see also Livingston v. Hoffnagle,* 2019 WL 7500501, n. 9 (N.D.N.Y. Nov. 8, 2019), *report and recommendation adopted,* 2020 WL 95431 (N.D.N.Y. Jan. 8, 2020) ("[i]nsofar as [a] complaint may be construed as alleging an Eighth Amendment violation based on the provision of 'freezer cold' food, Plaintiff fails to state a claim.") Nor does food made from soy. *See Mitchell v. New York State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205, at *12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer). Plaintiff may not have liked the food he was served in the SHU, but "[p]reference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu." *See Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 25, 2012); *see also Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at *6 (N.D.N.Y. Aug. 156, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"). Similarly, poor ventilation is not an example of an atypical and a significant hardship. *See e.g., Canales v. Sheahan,* 2017 WL 1164462, at *6 (W.D.N.Y. Mar. 28, 2017), *report and recommendation adopted sub nom.,* 2018 WL 774335 (W.D.N.Y. Feb. 7, 2018); *see also Bolton v. Goord*, 992 F. Supp. 604, 628 (S.D.N.Y. 1998) ("[t]he Eighth Amendment does not guarantee a certain type of ventilation system or a certain rate of air exchange."). Plaintiff's discomfort from the hot temperatures he faced for a portion of his time in the SHU do not suffice to create a liberty

interest. *See Barnes v. Craft*, No. 9:04-CV-1269, 2008 WL 3884369, at *6–7 (N.D.N.Y. Aug. 18, 2008) (granting summary judgment to defendant where Plaintiff faced hot and cold temperatures in SHU because "the conditions experienced by [p]laintiff in Administrative Segregation were the same as, or perhaps slightly more harsh than, the conditions ordinarily experienced in disciplinary confinement in a correctional facility within the New York State DOCS"); *see also Ramirez v. Strange,* No. 3:08CV906 AWT, 2010 WL 3828002, at *6 (D. Conn. Sept. 21, 2010) (granting summary judgment to defendants on prisoner's Eighth Amendment claim that the prison's lack of air conditioning led him to nearly faint from the heat several times because prisoner's allegations did "not reflect an extreme deprivation of the need for habitable shelter, health or safety.").

Finally, Plaintiff complains that he was given "less-effective" medication while in the SHU. (*See* Pltf.'s Decl. ¶ 58.) But "not every lapse in medical care is a constitutional wrong," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and Plaintiff fails to delineate what made the medication he received "less-effective." Moreover, a minor difference in medication "can hardly be said to be an atypical and significant hardship that triggers a liberty interest subject to due process protection." *See Riley v. Roycroft*, No. 16 CV 2227 (VB), 2017 WL 782917, at *6 n.5 (S.D.N.Y. Feb. 28, 2017). In fact, Plaintiff's arguments regarding his medical care while in the SHU primarily concern his disagreement with the treatment provided to him, *see, e.g.,* Pltf.'s Decl. ¶¶ 56, 60-62, 64-67, which cannot be the basis for a Constitutional claim. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he received adequate treatment .... [T]he essential test is one of medical necessity and not one simply of desirability") (internal quotation marks and citation omitted)). Plaintiff otherwise concedes that every medical complaint he raised was reviewed, *see* Pltf.'s Decl. ¶¶ 55-70, and his medical records indicate that he received routine and

9

frequent medical care while in the SHU, *see* ECF No. 118-6. In light of Plaintiff's uncontradicted medical records, the Court declines to find that Plaintiff faced atypical and significant hardship. *See Barnes v. Prack,* No. 11-CV-857, 2012 WL 7761905, at *13, n.9 (N.D.N.Y. Sept. 7, 2012), *report and recommendation adopted*, No. 11-CV- 857, 2013 WL 1121353 (N.D.N.Y. Mar. 18, 2013) (crediting medical records which indicated that plaintiff's skin was smooth and without redness over plaintiff's complaints of skin irritation,).

In sum, Plaintiff has failed to show that his confinement "imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life," and, as a result, he has failed to demonstrate a cognizable liberty interest. *See Thomas v. DeCastro*, No. 14-CV-6409 (KMK), 2019 WL 1428365, at *6 (S.D.N.Y. Mar. 29, 2019) (citations omitted). "Without denial of a cognizable liberty interest, there can be no due process violation." *Amaker v. Lee*, No. 13-CV-5292(NSR), 2019 WL 1978612, at *15 (S.D.N.Y. May 3, 2019) (quoting *Thompson v. LaClair*, No. 08-CV-0037(FJS)(DEP), 2009 WL 2762164, at *5 (N.D.N.Y. Aug. 25, 2009)); *see also Palmer,* 364 F.3d at 64 (plaintiff "had no right to due process [at his hearing] *unless* a liberty interest was infringed as a result") (internal quotation marks omitted) (alteration and emphasis in original); *Colon v. Howard,* 215 F.3d 227, 230 (2d Cir. 2000) ("[T]he Constitution d[oes] not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to 'atypical and significant hardship on

the inmate in relation to ordinary incidents of prison life.'") (citation omitted). As a result, the Court grants Defendants summary judgment on Plaintiff's due process claims.[3]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The Clerk of Court is kindly directed to terminate the motion at ECF No. 114, enter judgment in favor of Defendants and close the case. The Clerk of Court is additionally directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

Dated: August 20, 2024
       White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[3] Because the Court dismisses Plaintiff's claims for failure to establish the deprivation of a cognizable liberty interest, it does not reach Defendants' arguments regarding qualified immunity, *Genier v. Vanarnum*, No. 913CV1460GTSDEP, 2016 WL 4507456, at *7 (N.D.N.Y. June 20, 2016), *report and recommendation adopted*, No. 913CV1460GTSDEP, 2016 WL 4508354 (N.D.N.Y. Aug. 26, 2016), or personal involvement. (*See* Defs.' MoL at 10-14.)